UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

GATLIN PLUMBING & HEATING, INC., )
and the UNITED STATES, *for the use and* )
*benefit of Gatlin Plumbing & Heating, Inc.*, )
                                                       )
    Plaintiffs,                        )
                                                       )
    v.                       )     CAUSE NO.: 2:12-CV-114-TLS
                                                       )
WELTY BUILDING COMPANY, LTD., )
ROTH BROS, INC., and OHIO FARMERS )
INSURANCE COMPANY, )
                                                       )
    Defendants.                   )

**OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss or to Stay Pending Mediation and/or Arbitration [ECF No. 14] filed by Defendants Welty Building Company, Ltd., and Ohio Farmers Insurance Company on May 2, 2012. The Defendants request dismissal of this cause for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons that follow, the Court will deny the Defendants' request to dismiss this cause for lack of subject matter jurisdiction but will grant the Defendants' request that the Court stay this matter pending mediation and/or arbitration.

**BACKGROUND**

On March 15, 2012, the United States, for the use and benefit of the Plaintiff, Gatlin Plumbing & Heating, Inc., filed a Complaint for Damages [ECF No. 1] in this Court, alleging a Miller Act claim (Count I) against Defendant Ohio Farmers Insurance Company as surety for the Plaintiff's contracts with Defendants Welty Building Company, Ltd., Carnegie Management and Development Corporation, and Roth Bros, Inc.; a breach of contract claim (Count II) against

Defendants Welty, Carnegie, and Roth; an unjust enrichment and quantum meruit claim (Count III) against Defendants Welty, Carnegie, and Roth; and a claim for accounts stated (Count IV) against Defendants Welty and Roth.[1] The Complaint alleged that federal question subject matter jurisdiction was proper under 28 U.S.C. § 1331 and the provision of the Miller Act giving federal courts original jurisdiction over Miller Act claims regardless of the amount in controversy, 40 U.S.C. § 3133(b)(3)(B), and that supplemental jurisdiction was proper over the state law claims under 28 U.S.C. § 1367. The Complaint asserted that Defendant Welty failed to pay the Plaintiff $20,624.00; that Defendant Roth failed to pay the Plaintiff $57,015.00; and that Defendant Carnegie failed to pay the Plaintiff $3,875.00. (Compl. ¶ 14, ECF No. 1.) The Complaint did not assert diversity jurisdiction.

The factual grounds for the Plaintiff's claims, as alleged in the Complaint, are that a contract exists between some combination of Defendants Welty, Carnegie, Roth, and a private company which the Plaintiff describes as the Crown Point VA Company.[2] The Plaintiff alleges that this contract was for the building of a Department of Veteran Affairs Outpatient Clinic in Crown Point, Indiana. The Plaintiff further alleges that the VA Clinic Project was a public works project, "[e]ither directly, or otherwise as defined." (Compl. ¶ 9.) The Plaintiff attached to the Complaint a Performance Bond, purchased by Defendant Welty, requiring Defendant Ohio Farmers to act as surety on Defendant Welty's behalf. (*See* Bond, ECF No. 1 at 8.) During the period of construction of the VA Clinic Project, Defendants Welty, Carnegie, and Roth entered

---

[1] Pursuant to the parties' stipulation, the Court dismissed Defendant Carnegie from this cause on June 14, 2012. (Order, ECF No. 28.)

[2] The Performance Bond attached to the Complaint describes this entity as Crown Point VA Company, LLC. (Bond, ECF No. 1 at 8.)

2

into construction contracts with the Plaintiff as a subcontractor, and, as articulated above, the Plaintiff claims that these Defendants failed to pay in accordance with the contracts. The Plaintiff submitted a claim for all amounts allegedly owing to Defendant Ohio Farmers pursuant to the Performance Bond, but Defendant Ohio Farmers refused payment.

Therefore, the Plaintiff filed the Complaint, including Count I, a Miller Act claim alleging that Defendant Ohio Farmers must pay as surety for the Plaintiff's claims against Defendants Welty, Carnegie, and Roth, because the Plaintiff believes that either the Crown Point VA Company or the Department of Veterans Affairs has required a bond from Defendants Welty, Carnegie, and/or Roth pursuant to the Miller Act. The Complaint does not include a copy of the contract between the Crown Point VA Company and Defendant Welty for construction of the VA Clinic Project, though that contract is incorporated by reference into the Performance Bond. Nowhere does the Complaint state the source of funding for the VA Clinic Project, though in its Response the Plaintiff states that "it is believed and alleged in the Complaint, that directly or indirectly federal funds were expended for the purposes of the project." (Resp. 5, ECF No. 18.) The Complaint also does not spell out the relationship between the Crown Point VA Company and the Department of Veterans Affairs, though the Plaintiff states in its Response that the contract between the Crown Point VA Company and the Department of Veterans Affairs may have included construction and/or lease agreements with one or more Defendants. (*Id.* 3 n.2.)

Defendants Welty and Ohio Farmers filed their Motion to Dismiss or to Stay Pending Mediation and/or Arbitration [ECF No. 14] on May 2, 2012, along with a Brief in Support [ECF No. 15] and a copy of the Subcontract Agreement [ECF No. 15-1] between Defendant Welty and the Plaintiff. Defendants Welty and Ohio Farmers argue that the Court should dismiss the

3

Complaint for lack of subject matter jurisdiction because the VA Clinic Project was not a public work under the Miller Act, and therefore the Performance Bond purchased by Defendant Welty in favor of Crown Point VA Company was not a Miller Act bond. Lacking subject matter jurisdiction for Count I, they urge the Court to decline to exercise supplemental jurisdiction over Counts II–IV. In the alternative, Defendants Welty and Ohio Farmers argue that the Court should stay this cause to allow for arbitration and/or mediation in accordance with the terms of the Subcontract Agreement.

In its Response [ECF No. 18], filed on May 16, 2012, the Plaintiff argues that it has sufficiently pled that the VA Clinic Project was a public work under the Miller Act by asserting that some party had a direct or indirect relationship with the Department of Veterans Affairs, and that said relationship contemplated: 1) public funding for the Project; or 2) a direct contract between a party and the Department of Veterans Affairs; or 3) the intention to construct the Project in order to lease it to the Department of Veterans Affairs for the general good. Later in its Response, the Plaintiff states: "the construction project was for the purposes of building a Department of Veterans Affairs Medical Clinic, though the same was to be leased, and, it is believed and alleged in the Complaint, that directly or indirectly federal funds were expended for the purposes of the project." (Resp. 4–5.) Advancing this primary argument—that the Department of Veterans Affairs agreed with some party to use federal funds to finance the Project—the Plaintiff insists that it has pled a Miller Act claim sufficient to establish federal question subject matter jurisdiction. With regard to the Defendants' request for a stay, the Plaintiff notes that the mediation and/or arbitration provision in the Subcontract Agreement "would delay the proceedings," but states that in light of those provisions the Plaintiff "has no

response as to the alternative request for stay." (*Id.* 5.)

The Defendants argue in their Reply [ECF No. 24], filed on May 23, that subject matter jurisdiction does not exist under the Miller Act where the Plaintiff had the ability to file and in fact did file a state mechanic's lien against the Project,[3] and where the federal government is not either a party to the construction contract or represented by an agent in the contracting process, is not the obligee under the bond, does not own the land where the building is built, and is not projected to own the building after it is completed. The Defendants also argue that federal funds were not used to finance the VA Clinic Project, as evidenced by the Performance Bond, which shows that Crown Point VA Company, LLC, owned the Project. Although a lease was not attached to the Reply, the Defendants appear to admit that the Department of Veterans Affairs entered into a lease agreement with the Crown Point VA Company. (Reply 4, ECF No. 24.)

Because the Court finds that the Complaint sufficiently states a federal claim under the Miller Act, the Court will deny the request to dismiss this cause for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter. "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998).

---

[3] The Defendants attached to their Reply a copy of a Lake County Superior Court Complaint filed by the Plaintiff on March 14, 2012, to foreclose a mechanic's lien against Defendants Welty, Carnegie, and Roth. (Lake County Compl. ¶ 11, ECF No. 24-1.)

When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003) (citing *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). The movant may also use affidavits and other material to support its motion if the complaint is formally sufficient but the movant's contention is that there is in fact no subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc) (stating that the movant may present evidence to support a contention that there is in fact no subject matter jurisdiction and "the court is free to weigh the evidence to determine whether jurisdiction has been established") (*overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc)); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) ("The law is clear that when considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (quotation marks and brackets omitted); *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999) ("Documents attached to the complaint are incorporated into it and become part of the pleading itself.") (citing Fed. R. Civ. P. 10(c); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998)). The plaintiff has the obligation to establish jurisdiction by competent proof. *Sapperstein v. Hager*, 188 F.3d 852, 855–56 (7th Cir. 1999) (citing *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir.1998)). The presumption of correctness accorded to a complaint's allegations falls away on the jurisdictional issue once a defendant

proffers evidence that calls the court's jurisdiction into question. *Id.* at 856.

The United States Supreme Court has long held that the "presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (quotation marks omitted); *City of Beloit v. Local 643 of Am. Fed'n of State, Cnty. & Mun. Employees*, 248 F.3d 650, 652 (7th Cir. 2001) (discussing the well-pleaded complaint rule). Where a plaintiff "presents a non-frivolous claim under federal law . . . no more is necessary for subject-matter jurisdiction." *Johnson v. Apna Ghar, Inc.*, 330 F.3d 999, 1001 (7th Cir. 2003) (quotation marks omitted). "There is a gulf between defeat on the merits and a lack of jurisdiction." *Id.* (quotation marks omitted); *see Turner/Ozanne v. Hyman/Power*, 111 F.3d 1312, 1316–17 (7th Cir. 1997) ("Jurisdiction under the federal question statute is not defeated by the possibility that the averments, upon close examination, might be determined not to state a cause of action.").

So long as a plaintiff's claim "arises under the laws of the United States and is neither 'immaterial and made solely for the purpose of obtaining jurisdiction' nor 'wholly insubstantial and frivolous,'" a district court has federal question jurisdiction and dismissal under Rule 12(b)(1) is improper. *Johnson*, 330 F.3d at 1002 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). However, where a federal statutory claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous," a dismissal for lack of subject matter jurisdiction is appropriate. *Turner/Ozanne*, 111 F.3d at 1317.

**ANALYSIS**

The Miller Act, 40 U.S.C. §§ 3131, *et seq.*, provides as follows:

> Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government . . . [a performance bond and a] payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person.

*Id.* § 3131(b). A person furnishing labor pursuant to "a contract for which a payment bond is furnished under section 3131" who is not paid in full within 90 days may bring a civil action "in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." *Id.* § 3133(b)(1) & (3)(B).

The Miller Act does not define what makes a project a "public work" within the meaning of the Act. The United States Supreme Court has found that "a library constructed on the campus of Howard University was a 'public work' within the meaning of the Miller Act because it was constructed with funds from the federal government and was established to serve the interest of the general public, despite the fact that Howard University was a private institution and held title to the land and the buildings." *Scarborough v. Carotex Constr., Inc.*, 420 F. App'x 870, 874 n.5 (11th Cir. 2011) (discussing and citing *U.S. ex rel. Noland Co. v. Irwin*, 316 U.S. 23, 28–30 (1942)). However, courts have looked to many factors to determine whether a project is a public work under the Miller Act, including the following: 1) whether the United States is "an obligee to the bond," *Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 675 (9th Cir. 1998); 2) "whether the bond[] [is] issued under the Miller Act," *id.*; 3) whether "the government or its direct agent is . . . a contracting party," *U.S. v. Suffolk Constr. Co., Inc.*, No. 95 CIV. 9363 (SS), 1996 WL 391875, at *3 (S.D.N.Y. Jul. 12, 1996) (Sotomayor,

J.) (finding this to be a "minimum requirement" for Miller Act jurisdiction); 4) whether the United States is "an initiator or ultimate operator of the project," *Operating Eng'rs*, 135 F.3d at 675; 5) "whether the work is done on property belonging to the United States," *id.*; 6) whether the United States is "the owner [or] the intended owner of the property," *U.S. ex rel. Gen. Elec. Supply Co. v. U.S. Fid. & Guar. Co.*, 11 F.3d 577, 583 (6th Cir. 1993); 7) whether the United States provides funding for the project, *id.* at 581 (stating that most courts have found that "government funding alone is not enough to make a project a 'public work'") (citing *U.S. ex rel. Miss. Rd. Supply Co. v. H.R. Morgan, Inc.*, 542 F.2d 262, 266 (5th Cir. 1976)); 8) whether "the subcontractors and suppliers of material could assert an action for equitable recovery against the United States or one of its agencies," *Miss. Rd.*, 542 F.2d at 266; and 9) whether "normal state labor and material lien remedies are unavailable because of federal ownership of the lands," *id.*

Although the Seventh Circuit has not considered what makes a project a public work under the Miller Act, it has stated that the Act "was intended by Congress to provide protection to those material suppliers . . . whose labor and materials go into public projects. It requires posting of surety bonds because normal state mechanics' lien rights are unavailable to subcontractors who perform work on federal projects." *U.S. ex rel. Westinghouse Elec. Supply Co. v. Sisson*, 927 F.2d 310, 312 (7th Cir. 1991). Moreover, the Seventh Circuit has stated that the Act should be "liberally construed in favor of . . . recovery." *Id.* (citing *United States ex rel. Morris Constr., Inc. v. Aetna Cas. Ins. Co.*, 908 F.2d 375 (8th Cir.1990); *United States ex rel. Consol. Pipe & Supply Co. v. Morrison–Knudsen Co.*, Inc., 687 F.2d 129 (6th Cir. 1982)).

In *Sullivan v. Faras-RLS Group, Ltd.*, 795 F. Supp. 305 (D. Ariz. 1992), the San Carlos Apache Tribe contracted with a contractor to build a structure to be used as a United States Post

9

Office. The structure was located on tribal land, and was to be leased to the United States Postal Service. In spite of the location on non-federal land, the federal government not being party to the contract or an obligee to any bond, and the agreement to lease instead of buy the structure, the district court found that the project was a public work under the Miller Act because the structure was "built entirely with federal funds" and because it would "clearly benefit[] the interest of the general public." *Id.* at 307. The *Sullivan* court's analysis has been criticized, however. *See U.S. ex rel. Integrated Prot. Servs., Inc. v. TK Elec. Servs., LLC*, No. 1:09-cv-41, 2010 WL 5691669, at *4 (S.D. Ohio Dec. 20, 2010) (finding *Sullivan* "neither controlling nor persuasive"); *Suffolk Constr.*, 1996 WL 391875, at *3 n.2 (criticizing the *Sullivan* court's analysis); *see also Gen. Elec. Supply*, 11 F.3d at 581 n.2 (declining to apply the *Sullivan* court's reasoning).

Finally, in a recent decision involving Defendants Roth, Welty, and Ohio Farmers, the United States District Court for the Southern District of Indiana declined to dismiss a Miller Act claim for lack of federal question subject matter jurisdiction. *Roth Bros., Inc. v. Ohio Farmers Ins. Co.*, No. 1:12-cv-0158-JMS-DKL, 2012 WL 2120013 (S.D. Ind. Jun. 11, 2012). In *Roth Bros.*, Defendant Welty was a general contractor with a contract to build a structure to be used by the Federal Bureau of Investigation (FBI) in Indianapolis. Defendant Roth was a subcontractor on the project. Defendant Welty purchased a bond from Defendant Ohio Farmers. The bond was in favor of a private company which was to own the structure, and which would lease the structure to the United States General Services Administration. Although the bond was not in favor of the United States, the United States did not own the real estate, and the United States was not a party to the construction contract, the *Roth Bros.* court found that federal

question subject matter jurisdiction existed. Applying the Seventh Circuit's reasoning in *Turner/Ozanne*, the *Roth Bros.* court held that the planned use of the structure by the FBI invested the court with jurisdiction to decide on the merits whether the project constituted a "public building or public work" for the purposes of the Miller Act. *Id.* at *2. While it did not explicitly state its reasoning, the *Roth Bros.* court necessarily found that "the attempt to invoke federal law [was] not frivolous," and exercised federal question jurisdiction accordingly. *Id.* at *1; *see Turner/Ozanne*, 111 F.3d at 1317.

The Court finds the *Roth Bros.* court's reasoning persuasive as to the issue of subject matter jurisdiction. In the present case, the Complaint does not indicate that the United States was a party to a construction contract, either directly or through an agent. Further, the Complaint does not indicate that any bond, whether under the Miller Act or otherwise, was issued in favor of the United States. Moreover, the Complaint indicates that the United States was not the owner of the land on which the structure was to be built and would not be the owner of the structure in the future. The Complaint does not suggest that the Plaintiff could assert an action for equitable recovery against the United States or one of its agencies. Finally, the Defendants point out that the Plaintiff not only had the ability to file a state mechanic's lien but in fact is pursuing such a lien in state court proceedings. All of these factors strongly suggest that, were the merits of the question whether the VA Clinic Project constitutes a public work under the Miller Act before the Court, the answer would be no.

However, the Defendants' Motion is not a motion to dismiss for failure to state a claim upon which relief can be granted; instead, the Defendants request dismissal because of a lack of subject matter jurisdiction. Count I of the Complaint is clearly a claim for recovery under the

Miller Act, a federal statute which provides a federal remedy and original federal jurisdiction. The Complaint pleads that the VA Clinic Project was a public work under the Miller Act, and suggests that federal funds were financing the building of the structure, which was to inure to the benefit of the public. Accepting as true all well-pled factual allegations and drawing all reasonable inferences in favor of the Plaintiff, *Alicea-Hernandez*, 320 F.3d at 701, the Complaint suggests that the United States is an initiator or ultimate operator of the VA Clinic Project, *Operating Eng'rs*, 135 F.3d at 675, that the United States is providing funding for the VA Clinic Project, *Gen. Elec. Supply*, 11 F.3d at 581, and that the VA Clinic Project was "established to serve the interest of the general public," *Scarborough*, 420 F. App'x at 874 n.5, all of which could support a finding that the Miller Act claim states a cause of action. The Complaint, on its face, states a cause of action under federal law. *See Rivet*, 522 U.S. at 475 (discussing the well-pleaded complaint rule). "Jurisdiction under the federal question statute is not defeated by the possibility that the averments, upon close examination, might be determined not to state a cause of action." *Turner/Ozanne*, 111 F.3d at 1316–17. The Defendants have not suggested that the Plaintiff included its Miller Act claim "solely for the purpose of obtaining jurisdiction," nor have they suggested that the Plaintiff's Miller Act claim is "frivolous." *Bell*, 327 U.S. at 682–83; *Johnson*, 330 F.3d at 1002. Indeed, the *Sullivan* court's reasoning in a similar situation, even though it has been criticized, indicates that the Plaintiff's decision to file a Miller Act claim was not frivolous. Although it appears the Plaintiff's Miller Act claim would be defeated on the merits, "[t]here is a gulf between defeat on the merits and a lack of jurisdiction." *Id.* at 1001 (quotation marks omitted). The Plaintiff has presented a non-frivolous claim and has clearly articulated it under federal law. "[N]o more is necessary for subject-matter jurisdiction." *Id.*

For the reasons discussed, the Court will deny the Motion to Dismiss for lack of subject matter jurisdiction. However, the Defendants' Motion presents an alternate request. The Defendants urge the Court to stay this case until such time as the parties can engage in mediation and/or binding arbitration pursuant to the Subcontract Agreement between the Plaintiff and Defendant Welty. (*See* Subcontract Agreement, ECF No. 15-1 at 10–11.) The Plaintiff offers no response to this request, except to note that it will delay these proceedings. The Court agrees with the Defendants that the Subcontract Agreement, signed by Defendant Welty and the Plaintiff, appears to require mediation "as a condition precedent to arbitration or the institution of legal or equitable proceedings by either party," and gives Defendant Welty the option "in its sole discretion" of electing binding arbitration. (*Id.*) The Plaintiff offers no argument for why the Court should not enforce the arbitration provision. Indeed, as the Defendants note, where the parties have agreed to arbitrate, "Indiana policy favors arbitration." *Med. Realty Assocs., LLC v. D.A. Dodd, Inc.*, 928 N.E.2d 871, 874 (Ind. Ct. App. 2010) (citing *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 905 (Ind. 2004)). Likewise, the Federal Artibration Act "establishes a federal policy favoring arbitration, requiring that [courts] rigorously enforce agreements to arbitrate." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotation marks and citation omitted). Accordingly, the Court will grant the Defendants' alternate request for a stay pending mediation and/or arbitration.

## CONCLUSION

For the reasons stated above, the Court DENIES IN PART and GRANTS IN PART the Motion to Dismiss or to Stay Pending Mediation and/or Arbitration [ECF No. 14]. Specifically,

the Court DENIES the Defendants' request that the Court dismiss this cause as against them for lack of subject matter jurisdiction. However, the Court GRANTS the Defendants' request that the Court stay this matter pending mediation and/or arbitration. The Court SETS this matter for a telephonic status conference on March 28, 2013, at 1:30 PM before Judge Theresa L. Springmann, to inquire into the schedule needed for exhausting mediation and/or arbitration. The Court will initiate the call.

    SO ORDERED on February 26, 2013.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION